IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT DALE BECKSTEAD,<br><br>    Plaintiff,<br><br>vs.<br><br>EG&G TECHNICAL SERVICES EMPLOYEE BENEFIT PLAN, EG&G TECHNICAL SERVICES, INC., and RELIANCE STANDARD LIFE INSURANCE COMPANY,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:05-CV-316 TS |

This matter came before the Court on October 3, 2006, for a hearing on Defendants' Motions for Summary Judgment.

I.  INTRODUCTION

Plaintiff, Robert Beckstead (Beckstead), brings this action against his employer EG&G Technical Services, Inc. (EG&G), EG&G Technical Services Employee Benefit Plan (the Plan), and

Reliance Standard Life Insurance Company (Reliance Standard) under ERISA[1] to recover accidental life insurance benefits in excess of a coverage cap because he contends that the coverage cap was not disclosed in the two Summary Plan Descriptions (SPDs) as required by ERISA. He also brings claims against all defendants for promissory estoppel under ERISA and state law and against EG&G for negligence under state law.

Defendants move for summary judgment on all claims.

## II.  UNDISPUTED FACTS

EG&G provides benefits to eligible employees through the Plan, which is ERISA qualified. EG&G contracted with Reliance Standard for the optional group accidental life insurance portion of the Plan. The group accidental life insurance policy (the policy) provides that Reliance Standard shall serve as the "claims review fiduciary" with respect to the policy and the Plan. The policy grants the claims review fiduciary discretion to interpret the Plan and the policy, to determine eligibility for benefits, and provides that decisions "by the claims review fiduciary shall be complete, final and binding on all parties."[2]

The Plan contains a coverage cap of "ten times Earnings," meaning that the insured person's principal sum of benefits could not exceed ten times his or her annual earnings. The coverage cap applies to a spouse's coverage at 50% of the insured person's principal sum.

The policy also provides that "clerical errors in connection with the Policy or delays in keeping records for the Policy, whether by you [Beckstead], us [Reliance Standard] or the Plan

---

[1]The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq.

[2]Administrative record (AR), at 27.

Administrator [EG&G] . . . will not continue insurance that would otherwise have ceased *or should not have been in effect*. If appropriate, a fair adjustment of premium will be made to correct a clerical error."[3]

EG&G is the Plan sponsor and the Plan Administrator. As such, it is responsible for processing the enrollment cards, collecting premiums, and maintaining adequate records. But in those roles EG&G did not approve, deny, or pay claims.

On April 9, 2001, Beckstead elected $500,000 in optional accidental death insurance coverage through the Plan. He additionally elected dependent coverage for his spouse in an amount not to exceed 50% of his own coverage. EG&G withheld premiums from Beckstead's paychecks in an amount based on coverage of $500,000.

On May 4, 2004, Beckstead's wife was killed in an automobile accident. EG&G submitted a claim for $200,000 on his behalf. Based on the claim, Reliance Standard paid Beckstead $200,000, which purported to represent half of his annual income, times ten.

Beckstead then informed Reliance Standard of his position that his own coverage had been $500,000 and, therefore, his wife's coverage should have been half that amount, or $250,000.

Reliance Standard eventually determined that Beckstead was making $40,640 a year, so his coverage, as capped, should have been $406,400.[4] His spouse's coverage should have been half of that amount, or $203,200. Accordingly, Reliance Standard paid Beckstead an additional $3,200. In total, Beckstead received $203,200 in accidental death benefits from Reliance Standard -- half of

---

[3]AR at 19 (emphasis added).

[4]Calculated as $40,640 x 10.

his annual earnings, times ten. EG&G then refunded Beckstead $122, which represented his overpayment of premiums.

Beckstead brought this action seeking to recover the $48,600 difference between the $250,000 he claims and the $203,200 benefit he actually received.

### III.  DISCUSSION

A.  <u>Summary Judgment Standard</u>

The standard for summary judgment under Fed. R. Civ. P. 56 is well known: the moving party is entitled to summary judgment when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

B.  <u>Standard of Review</u>

"Where as here, the Plan grants a Plan Administrator or delegate discretion in interpreting the terms of, and determining the grant of benefits under, the plan," the Court must uphold its decision unless it is arbitrary and capricious.[5] Reliance Standard, as claims review fiduciary, was granted discretion to interpret the terms of the Plan and to grant or deny claims. Because Reliance Standard is both the insurer and a delegate granted discretion to interpret the Plan, the Court applies a "'standard conflict' sliding scale of deference."[6] The Court notes that in the recent *Adamson*[7] case, the Tenth Circuit implied that such a conflict does not necessarily warrant less deference to the administrative decision, but nonetheless applied that sliding scale of deference "in accordance with

---

[5] *Adamson v. Unum Life Ins. Co. of America*, 455 F.3d 1209, 1212-13 (10th Cir. 2006).

[6] *Id*.

[7] *Id.*

4

our precedent."[8]  Both Reliance Standard and Beckstead accept this modified standard of review. Thus, Reliance Standard is subject to a modified arbitrary and capricious standard and must show with substantial evidence that the decision was not arbitrary and capricious.[9]  Its decision must be reviewed in light of what information was available to it at the time it made the decision, namely the Plan documents and the administrative record.[10]  Although the Court applies a sliding scale of deference, the Court also finds that even if no deference were afforded to the decision, the Court would reach the same conclusion.

With regard to EG&G, Beckstead argues that a de novo standard is applicable.  His ERISA claim against EG&G is based upon its alleged failure to inform him of the coverage cap.  He contends that the coverage cap is the type of information that ERISA requires be provided in a SPD by the Plan Administrator.  Thus, Beckstead contends that determining if the requirement was met requires the Court to interpret a federal statute; an interpretation that should be reviewed de novo.[11]

A SPD is part of the Plan documents and, if the ERISA plan documents are not ambiguous, the Court reviews them as a matter of law.[12]  Thus, Beckstead is correct that the determination of a

---

[8]*Id*. (Applying sliding scale of deference even though court argued that its prior observations on the potential motivation of an insurer doubling as entity that decided claims, were never meant to be an "*ipso facto* conclusive presumption to be applied without regard to the facts of the case -- including solvency of the insurer or the nature or size of the claim.").

[9]*Fought v. Unum Life Ins. Co of Am.* 379 F.3d 997, 1005-1006, 1008 (10th Cir. 2004).

[10]*Id*. at 1003, 1008.

[11]*Wilkins v. Mason Tenders Dist. Counsel Pension Fund,* 445 F.3d 572, 581 (2nd Cir. 2006).

[12]*Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996) (court interprets terms of an ERISA plan by examining plan documents as a whole, and if unambiguous, construes them as

Plan Administrator's compliance with ERISA's statutes and regulations is one of statutory interpretation in which the Court owes the Plan Administrator no deference.[13]

    C.      Reliance Standard's Summary Judgment Motion

Reliance Standard moves for summary judgment on Beckstead's claims against it under ERISA and promissory estoppel. On the ERISA claim, Reliance Standard contends that the undisputed facts show that the policy terms govern Beckstead's claim, that the policy imposed a coverage cap. Therefore, it was not arbitrary or capricious to impose the coverage cap on the benefit paid. Reliance Standard further contends that under the clerical error provision of the policy, the clerical error by EG&G in withholding the greater premiums cannot continue coverage that should not have been in effect. Reliance Standard also contends that it cannot be liable for any failure to disclose information in the SPDs because it is not the Plan Administrator. Reliance Standard finally contends that the coverage cap is not a grounds for disqualification that was required to be disclosed in a SPD.

Beckstead contends that because he was not informed of the coverage cap and was paying the premiums on the larger coverage at the time of his wife's death, the coverage cap does not apply. He further contends that ERISA requires that a SPD disclose information such as a description or summary of benefits and a statement of the conditions pertaining to eligibility to receive benefits.[14]

---

a matter of law; and applying de novo review to trial court's interpretation of plan).

[13]*Id.*

[14]29 U.S.C. § 1022(b) and 29 C.F.R. §§2520.102-3(b) (SPD to contain information regarding circumstances which may result in disqualification, ineligibility, or denial or loss of benefits); 2520-102-3(j)(2) (SPD shall include a statement of the conditions pertaining to eligibility to receive benefits, and a description or summary of the benefits).

He submits that the coverage cap is within those categories of information. Because he alleges the coverage cap was not disclosed in the two SPDs made available to him, he argues that it is not enforceable against him.

Applying the standard conflict sliding scale of deference, the administrative record shows that Reliance Standard applied the coverage cap set forth in the policy. The policy clearly limited the coverage using the ten times earnings formula. The policy did not determine coverage solely by the amount of premiums paid.[15]

Having reviewed Reliance Standard's decision and the administrative record, the Court finds that Reliance Standard has shown that its decision was not arbitrary or capricious under any standard. Reliance Standard received the initial claim on Beckstead's behalf from EG&G and paid that claim in full. Upon receiving Beckstead's claim that he was insured for a higher amount, Reliance Standard contacting EG&G to verify his income and coverage. EG&G responded with Beckstead's actual annual income and the information that Beckstead had been paying the higher amount in error. Reliance Standard recalculated the benefits based upon Beckstead's actual annual income. Reliance Standard paid Beckstead the additional amount of benefit to reflect half of his actual annual earnings. Reliance Standard denied the claim for any additional benefits because it determined that Beckstead's payment of additional premiums was a clerical error that could not continue coverage

---

[15]The policy language distinguishes this case from such cases as *Adamson*, where the policy's coverage during the time in question was based upon "the amount for which premium is being deducted from the employee's pay." 455 F.3d at 1214-15. Thus, in *Adamson*, unlike the present case, the amount of the premiums paid was relevant to the amount of the coverage. *Id.*

that should not have been in effect.  Beckstead was refunded the amount of his overpayment of premiums by EG&G.

Upon Beckstead's appeal of its claim decision, Reliance Standard reviewed the claim and informed Beckstead it was denying his appeal for the same reasons: the coverage cap limited his coverage and, under the clerical error provision, his payment of a higher premium did not result in additional coverage.

Beckstead argues that the clerical error clause does not apply because EG&G intentionally hid the fact that they made a mistake, which amounts to more than a clerical error.  The Court does not agree.  The administrative record is clear that allowing Beckstead to sign up for and pay premiums on an amount of coverage in excess of the cap was a clerical error, regardless of whether or not EG&G attempted to hide such error.  The clerical error clause expressly included errors by the Plan Administrator, EG&G.  Thus, Reliance Standard, based on the administrative record and Plan documents, paid Beckstead the full amount of coverage applying the coverage cap.  Under any standard of review, this decision was neither arbitrary or capricious because it is fully supported by the plain language of the policy and the information that Reliance Standard had at the time it made the decision.

Beckstead also argues that because Reliance Standard prepared the SPDs at the request of Plan sponsor EG&G, Reliance Standard is responsible under ERISA for the failure to include the required information in the SPDs.  Reliance Standard points out that ERISA imposes the disclosure requirements on the Plan Administrator and it is not that Plan Administrator.

The Court finds that Reliance Standard is correct that because it is not the Plan Administrator, ERISA disclosure requirements do not apply to it.[16] Therefore, any failure to comply with those disclosure requirements cannot be the basis of any liability for Reliance Standard.

For this reason, the Court need not address Reliance Standard's alternative argument that the coverage cap is not a disqualification, ineligibility, denial or loss of benefits that would be required to be disclosed in the SPDs. Reliance Standard has shown that it is entitled to summary judgment on the ERISA claim.

Reliance Standard also contends that it is entitled to summary judgment on the promissory estoppel claim because that claim is preempted by ERISA. Beckstead contends that the promissory estoppel claims are not preempted for three reasons. First, because the Tenth Circuit has expressly left open the possibility of such equitable relief under ERISA in "egregious" cases.[17] Second, because the Plan expressly provides that Maryland law applies. And third, he contends that the Court may apply a Utah statute under which he contends that if the higher premiums were accepted, there is coverage.

ERISA supersedes "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan."[18] As recently explained by the Tenth Circuit in the *Lind* case: "ERISA applies whenever 'respondents complain . . . about denials of coverage promised under the terms of

---

[16]*Kobold v. Aetna U.S. Healthcare, Inc.*, 258 F.Supp.2d 1317 (M.D. Fla. 2003) (insurer that was neither plan sponsor nor plan administrator had no duty under ERISA to provide plan information to employee).

[17]Beckstead relies on *Callery v. U.S. Life Ins. Co. In the City of New York*, 392 F.3d 401 (10th Cir. 2004).

[18]29 U.S.C. 1144(a).

an ERISA-regulated employee benefit plan,' or 'to rectify a wrongful denial of benefits.' . . . ERISA applies to denials of coverage that are either proper under the plan's rules or improper under the plan's rules."[19] In *Lind*, the Tenth Circuit also reiterated that it narrowly construes the availability of equitable relief under ERISA and that such relief does not encompass a claim for proceeds of a life insurance policy.[20]

Beckstead attempts to avoid preemption by pointing out that the policy provides that Maryland law governs. But the Supreme Court has said that "any state-law cause of action that duplicates, supplements, or supplants ERISA's civil enforcement remedy conflicts with clear congressional intent to make that remedy exclusive, and is therefore pre-empted."[21] Thus, regardless of whether the policy specifies an applicable state law, ERISA clearly preempts any state law under which Beckstead brings a claim for benefits in connection with an ERISA-qualified plan.

Beckstead also contends that Utah Code Ann. § 31A-23a-410 applies. He does not explain why Utah law would be applicable or why this statute would not be preempted.

In *Adamson*, the Tenth Circuit addressed a similar argument for the applicability of § 31A-23a-410. It held that "even assuming that" this statute was not pre-empted, it "applies only to situations where the insured's policy has been cancelled."[22] The Tenth Circuit further found that a

---

[19]*Lind v. Aetna Health, Inc.*, __ F.3d __, 2006 WL 3072606 * 2 (10th Cir. October 31, 2006) (quoting *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004) and 29 U.S.C. § 1132(a)(1)(B)).

[20]*Lind,* at *4 (citing *Callery*).

[21]*Davila*, 542 U.S. at 200-01.

[22]455 F.3d at 125-16.

Plan Administrator's determination that the insured was covered for a lesser amount of insurance than the employee claimed did not involve a situation where the policy had been cancelled[23] and, therefore, the statute did not apply. This ruling applies equally to the present case.

The Court concludes that Beckstead's promissory estoppel claim is preempted by ERISA and that he has not shown he is entitled to the equitable relief of estoppel under ERISA. Accordingly, Reliance Standard is entitled to summary judgment on Beckstead's promissory estoppel claim.

Lastly, Plaintiff also contends that even if the full higher benefit is not granted, his coverage was not properly calculated because it should have been rounded up in increments of $10,000, as required by the policy.[24] Reliance Standard contends that the benefit was calculated correctly because the increments of $10,000 provision is "subject to ten times Earnings."[25]

The Court agrees with Reliance Standard and, having found that it was not arbitrary and capricious to apply the coverage cap, finds that the benefit was correctly calculated.

---

[23]*Id.*

[24]AR at 16.

[25]*Id.*

D.      EG&G's[26] Summary Judgment Motion

EG&G contends that it is not the insurer and did not make the denial decision, and therefore, it is not liable for any failure to pay benefits. EG&G contends that it has shown by undisputed facts that it complied with ERISA by disclosing the information in the SPDs and making those SPDs available to Beckstead.

Beckstead argues that EG&G failed to include the information about the coverage cap in the SPDs and, therefore, the cap is not effective to limit his coverage.[27] Beckstead alleges that the SPDs were defective under ERISA and were not made available to him.

As Plan Administrator, EG&G had the duty to provide an adequate SPD to covered employees.[28] Under certain circumstances, an insured who shows both that the SPD incorrectly described benefits and significant reliance or prejudice may recover from the Plan Administrator.[29]

In support of its motion, EG&G submits the affidavits of its Corporate Vice President of Human Resources and its Human Resources Manager. These affidavits state that Beckstead attended meetings which described the coverage cap and, most significantly, that the SPDs contained the necessary information and were available on the company's internet website during all relevant times.

---

[26]EG&G and the Plan jointly brought the summary judgment motion. For the purposes of this motion, the Court will refer to them collectively as "EG&G."

[27]See Amended Complaint, at 2 (ERISA claim brought under § 502(a), 29 U.S.C. § 1022(a) (requiring that a SPD containing certain information be furnished to plan participants)).

[28]*Chiles*, 95 F.3d at 1518.

[29]*Id.*

According to the affiants, a document styled as the "2000 Certificate of Insurance and Summary Plan Description" was posted on EG&G's internet site from May 2001 through February 2004 and all employees had access to the document.[30] The SPD portion of that document is only two pages and provides that it "*and* the description of benefits" constitute the SPD. The description of benefits is contained in the Certificate of Insurance portion of the document and it contains the coverage cap. The affiants further state that 2004 SPD was posted on the internet site in February 2004, and also contains the coverage cap.[31] This evidence establishes that EG&G complied with all of ERISA's requirements regarding the SPDs to their employees when Beckstead signed up for the insurance.

In his opposition, Beckstead denies that the information was made available to him, but fails to come forward with affidavits or other evidence in support of his allegation. At the summary judgment stage, the party opposing the motion may not rely on his allegations, but must "present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."[32] Therefore, Beckstead has not met his burden of showing a material issue of fact that the SPDs did not contain the coverage cap information or that they were not made available to him. Accordingly, there being no material issue of fact, EG&G is entitled to summary judgment on the ERISA claim.

---

[30]Sweeting Aff. at ¶4.

[31]Rudisin Aff. Ex. B at EGG00061-62.

[32]*Clinger v. New Mexico Highlands Univ. Bd. of Regents*, 215 F.3d 1162, 1165 (10th Cir. 2000) (quoting *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir. 1995)).

Beckstead brings a negligence claim against EG&G arising from his enrollment and payment of premiums based on coverage exceeding the coverage cap. EG&G contends that the negligence claim is pre-empted by ERISA.

Tenth Circuit cases have consistently held that negligence claims are included in ERISA's broad preemption clause.[33] The Court finds that the negligence claim is preempted by ERISA and, therefore, EG&G is entitled to summary judgment on the negligence claim.

Beckstead also brings a promissory estoppel claim against EG&G. For the same reasons stated above, Beckstead has not shown that he is entitled to equitable relief under ERISA and ERISA preempts Beckstead's promissory estoppel cause of action against EG&G. Accordingly, EG&G is entitled to summary judgment on the promissory estoppel claim.

## IV. CONCLUSION AND ORDER

The Court finds that Reliance Standard has shown that denial of the claim for the larger benefit was not arbitrary or capricious. The undisputed facts show that the SPD disclosure requirements of ERISA were adequately met. The negligence and promissory estoppel claims are preempted by ERISA. Accordingly, Defendants are entitled to summary judgment. Based upon the foregoing it is therefore

ORDERED that Defendant Reliance Standard Life Insurance Company's Motion for Summary Judgment (Docket No. 18) is GRANTED. It is further

---

[33]*See, e.g.*, *Baker v. Comprehensive Employee Solutions,* 227 F.R.D. 354, 358 (D. Utah 2005).

ORDERED that Defendants EG&G Technical Services, Inc., and EG&G Technical Services Employee Benefit Plan's Motion for Summary Judgment (Docket No. 21) is GRANTED. It is further

ORDERED that judgment shall be entered in favor of Defendants and against Plaintiff on all claims.

DATED this 14th day of November, 2006.

BY THE COURT:

_____
TED STEWART
United States District Judge